# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GUNTERSVILLE BREATHABLES, INC.** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:21-cv-01543-ACA** |
| | ] | |
| **TWENTY-SIX DESIGNS, LLC,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Guntersville Breathables, Inc. ("Guntersville") and Defendant Defendant Twenty-Six Designs, LLC ("TSD") both design, distribute, and sell waterproof bags, each under its own trademark. After correspondence between the parties about whether Guntersville's bags infringed TSD's trademark, Guntersville filed this lawsuit, seeking a declaratory judgment that its bags do not infringe on TSD's mark. (Doc. 1). Thirteen days later, TSD filed suit in the District of New Jersey, alleging that Guntersville was infringing TSD's mark and asserting claims for violations of the Lanham Act and common law unfair competition. *Twenty-Six Designs, LLC v. Guntersville Breathables, Inc.*, no. 2:21-cv-20293-MCA-MAH, Doc. 1 (D.N.J. Dec. 1, 2021). Guntersville has moved to enjoin TSD from proceeding with the New Jersey action (doc. 12) and TSD has moved to dismiss the case filed in this district as an improper anticipatory action (doc. 20).

Because the court finds that this is an improper anticipatory action and that the other relevant factors are neutral, the court **GRANTS** TSD's motion to dismiss and **WILL DISMISS** this action **WITH PREJUDICE**.  The court **DENIES AS MOOT** Guntersville's motion for an injunction.

## I.     PRELIMINARY ISSUES

Before describing the facts the court must consider in deciding these motions, the court must clarify the type of motion to dismiss filed by TSD and whether the court may consider evidence in deciding that motion.  TSD asserts that its motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Rule 12(b) provides that the court may dismiss an action on several grounds, including lack of personal jurisdiction (Rule 12(b)(2)), improper venue (Rule 12(b)(3)), and failure to state a claim upon which relief can be granted (Rule 12(b)(6)).  Fed. R. Civ. P. 12(b).  Typically, the court may not consider evidence in deciding a Rule 12(b)(6) motion for failure to state a claim, although it may consider evidence in connection with other motions under Rule 12(b).  *See* Fed. R. Civ. P. 12(d).

Despite citing Rule 12(b)(2) and 12(b)(6), TSD's brief makes no argument about personal jurisdiction or whether Guntersville states a claim, and it has therefore failed to adequately support its motion to dismiss on those grounds.  (*See generally* doc. 23).  With respect to venue, TSD argues that, as an equitable matter,

venue is more proper in New Jersey because Guntersville filed the Alabama lawsuit in anticipation of TSD's New Jersey lawsuit and with the intent to prevent TSD from having its choice of forum.  (*See id.* at 15–26).  But "Rule 12(b)(3) states that a party may move to dismiss a case for 'improper venue.'  These provisions therefore authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  TSD makes no argument that venue in the Northern District of Alabama is improper under the federal venue statute, 28 U.S.C. § 1391(b); TSD argues only that, for equitable reasons, the District of New Jersey is the preferable forum.  (Doc. 23 at 15–26).  Accordingly, Rule 12(b)(3) is not the proper vehicle for TSD's motion.

TSD actually seeks dismissal based not on Rule 12(b), but on the equitable ground that Guntersville improperly filed this action in anticipation of TSD's lawsuit and in an attempt to deprive TSD of its chosen forum.  (Doc. 23 at 15–26).  This argument stems from the first-filed rule, which provides that "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).  TSD contends that Guntersville's filing of this action in anticipation of TSD's lawsuit is a compelling circumstance that warrants dismissal of this case in favor of TSD's case.  (Doc. 23 at 15–26).  "The first-filed

rule is a rule of equity . . . ." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 80 (11th Cir. 2013).  And equitable considerations underlie any decision to find that an exception to the rule applies.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135–36 (11th Cir. 2005).  Accordingly, the court may consider the evidence submitted by the parties in deciding whether to exercise its discretion.  With that in mind, the court will describe the facts relevant to the motions before the court.

## II.     FACTS AND PROCEDURAL HISTORY

Guntersville, an Alabama corporation with its principal place of business in Arab, Alabama, designs, markets, and sells apparel, rainwear, footwear, bags, and backpacks.  (Doc. 16 at 2 ¶ 2, 4 ¶ 9).  Since 1996, Guntersville has used the mark FROGG TOGGS for its apparel and rainwear.  (*Id.* at 4 ¶ 11).  In March 1996, the U.S. Patent & Trademark Office ("USPTO") issued Guntersville a trademark number for its FROGG TOGGS mark.  (*Id.* at 5–6 ¶ 17).  Guntersville has used the FROGG TOGGS mark on bags since 2003.  (*Id.* at 5 ¶ 12).

TSD, a limited liability company based in New Jersey, also sells apparel and bags. (Doc. 16 at 2 ¶ 3; doc. 23-5 at 1–2 ¶¶ 2–4).  According to TSD, it has designed, produced, marketed, and sold BOGG bags since 2011.  (Doc. 23-4 at 3 ¶ 7).  One of the BOGG bags is an ethylene-vinyl acetate ("EVA") bag that displays three of TSD's marks: the word BOGG, a stylized B, and four parallel zig-zag marks on the

bottom of the bag.  (*Id.* at 3 ¶¶ 7–8).  TSD has registered its BOGG mark with the USPTO and has filed applications for the four parallel zig zag lines mark and the BOGG bag trade dress.  (*Id.* at 4–5 ¶ 12).

In June 2021, Guntersville contacted TSD about licensing the BOGG mark for footwear.  (Doc. 23-3 at 2; doc. 23-5 at 4–5 ¶¶ 9–10).  TSD declined to license its mark.  (Doc. 23-5 at 5 ¶ 10).  In August 2021, Guntersville filed an application with the USPTO to use its FROGG TOGGS mark for a variety of bags and clothing. (Doc. 16 at 6 ¶ 19).

At some time in 2021, Guntersville began producing an EVA bag under the FROGG TOGGS mark.  (Doc. 26-1 at 3 ¶ 6; doc. 16 at 6 ¶ 20).  According to TSD, Guntersville's early marketing materials were created using digitally altered marketing materials for the BOGG bags, and Guntersville's description of its EVA bags continues to copy from TSD.  (Doc. 23-5 at 5–6 ¶¶ 12–13; doc. 23-3 at 3–4; doc. 27-2 at 2 ¶ 3).

On October 5, 2021, TSD, through counsel, sent Guntersville a letter stating that it believed Guntersville was infringing TSD's trade dress and trademarks and asking Guntersville to cease and desist.  (Doc. 23-1 at 2–4; *see also* doc. 16 at 11–12 ¶ 29).  Later that month, Guntersville, through counsel, responded that it did not believe its bags or its FROGG TOGGS mark infringed TDS's rights.  (Doc. 23-2 at 2–4; doc. 16 at 12 ¶ 30).

On November 9, 2021, Guntersville's attorney called TSD's founder and chief executive officer to ask "whether TSD was open to being purchased by Guntersville." (Doc. 23-5 at 7 ¶ 16). He emailed TSD the same question the following day. (*Id.*; doc. 27-1 at 1–3). TSD declined the offer. (Doc. 23-5 at 7 ¶ 16).

On November 9, 2021—the same day that Guntersville's attorney emailed TSD's CEO—TSD sent another cease and desist letter to Guntersville. (Doc. 23-3 at 2–5; doc. 16 at 12 ¶ 31). The letter questioned why Guntersville's attorney had contacted TSD directly and maintained TSD's position that Guntersville's bags infringed TSD's rights. (Doc. 23-3 at 2). TSD stated: "[I]t would seem prudent for [Guntersville] to cancel any orders it has taken and to refrain from taking any more orders before its conduct makes it vulnerable to a substantial damages award for willful infringement," (*id.*), and "I trust you have already sent a litigation hold to your client, but please note that we will be particularly interested in all documents and communications surrounding the creation of the images below and expect that they will be preserved pending full resolution of this dispute," (*id.* at 3). The letter also referenced that "[d]iscovery may show" whether Guntersville had modified its FROGG TOGGS mark to make it more like the BOGGS mark. (*Id.* at 5). Finally, the letter stated that TSD was prepared to "prove acquired distinctiveness to a Court . . . . And once that is proven, a finding of infringement will be inevitable

given the way in which your client slavishly copied my client's product." (*Id.*). The letter concluded by giving Guntersville until November 17 to agree to cease its infringing conduct. (*Id.*).

On November 18, 2021, Guntersville filed its initial complaint in the Northern District of Alabama. (Doc. 1). The initial complaint sought a declaratory judgment under 28 U.S.C. § 2201 relating to its use of its FROGG TOGGS mark and its use, manufacture, sale, and distribution of its EVA bag. (*Id.* at 18–21). Guntersville acknowledged that TSD's cease and desist letters threatened litigation (*id.* at 17 ¶ 38) and that the letters put Guntersville "under an imminent apprehension of litigation for its continued distribution of" the EVA bag using the FROGG TOGGS mark (*id.* at 17–18 ¶ 40).

The day Guntersville filed its complaint in Alabama, Guntersville's attorney emailed TSD's attorney, stating "[a]s I mentioned during our call, Guntersville Breathables, Inc. filed today in the U.S. District Court for the Northern District of Alabama a declaratory judgement action against Twenty-Six Designs, LLC," and asked if TSD was willing to waive service. (Doc. 26-2 at 4). The next day, TSD's attorney acknowledged the email and said he would check with TSD. (*Id.*).

On December 1, 2021—thirteen days after Guntersville filed its lawsuit in this district—TSD filed a lawsuit against Guntersville in the District of New Jersey. *Twenty-Six Designs, LLC*, no. 2:21-cv-20293-MCA-MAH, Doc. 1 (D.N.J. Dec. 1,

2021).   TSD's complaint does not seek declaratory relief, but instead asserts substantive claims that Guntersville violated the Lanham Act and engaged in common law unfair competition.  *Id.* at 11–12.

At the end of December, TSD filed in this Alabama action a motion to dismiss Guntersville's complaint for lack of personal jurisdiction and as an improper anticipatory action designed to deprive TSD of its chosen forum.  (Doc. 7 at 2). Guntersville then moved to enjoin TSD from pursuing its case in New Jersey.  (Doc. 12).  Soon after, Guntersville amended its complaint as of right.  (Doc. 16).  The amended complaint reasserts the request for declaratory judgment but also adds a substantive claim for false designation of origin, in violation of the Lanham Act.  (*Id.* at 18–21).  Guntersville expressly asserts the false designation of origin claim only in the alternative to its request for a declaration that no likelihood of confusion between the marks exists.  (*Id.* at 20 ¶ 46).  TSD has now moved to dismiss the amended complaint only on the ground that the Alabama case is an anticipatory declaratory judgment action designed to deprive TSD of its chosen forum.  (Doc. 20).

## III.   DISCUSSION

TSD asks this court to dismiss the action on the equitable ground that, although Guntersville filed this lawsuit before TDS filed its New Jersey case, Guntersville did so knowing that TSD was preparing to file suit and with the intent

of depriving TDS of its chosen forum.  (Doc. 23 at 15–20).  It rests its motion on the doctrine that a court may decline to exercise jurisdiction over a declaratory judgment action improperly filed in anticipation of another party's coercive action.  (*Id.*).  Guntersville, by contrast, asks this court to enjoin TSD from proceeding with its New Jersey case on the ground that permitting both cases to proceed is a waste of judicial resources and risks inconsistent judgments.  (Doc. 12-1 at 11–21).

"[W]hen a federal court has jurisdiction, it also has a virtually unflagging obligation to exercise that authority."  *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (alteration and quotation marks omitted).  The federal Declaratory Judgment Act does not, however, mandate that the court must accept jurisdiction over a declaratory judgment action.  The statute provides in relevant part that "[i]n a case of actual controversy within its jurisdiction, . . . , any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  Because of the discretionary language in the statute, federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

The court notes that, although Guntersville's initial complaint requested only declaratory judgment, the amended complaint also asserts, in the alternative, a substantive claim for false designation of origin.  (*See* doc. 16 at 20–21).

Accordingly, the court does not have discretion to dismiss the amended complaint wholesale based on the discretionary jurisdiction afforded by the Declaratory Judgment Act. *See Mata*, 576 U.S. at 150.

Nevertheless, the court has the discretion to dismiss this action based on "the general principle" of "avoid[ing] duplicative litigation." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976). In determining whether to dismiss a duplicative case, the court must bear in mind the "first-filed rule," which provides that "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Haydu*, 675 F.2d at 1174. The Eleventh Circuit "require[s] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving compelling circumstances to warrant an exception to the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (quotation marks omitted). "The first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co.*, 713 F.3d at 78.

There is no dispute that this action and the New Jersey action are duplicative: both actions involve the same parties, the same trademarks and trade dress, the same purportedly infringing products, and the same legal questions. There is also no dispute that Guntersville filed this action before TSD filed its New Jersey action. As

such, it is appropriate for this court to decide whether this case should proceed or be dismissed in deference to the second-filed lawsuit and whether this court should enjoin TSD from proceeding with its New Jersey case. *See Collegiate Licensing Co.*, 713 F.3d at 78. The court will address the propriety of dismissal before turning to the injunction question.

TSD's only argument in support of dismissal is that Guntersville filed this action in anticipation of TSD's New Jersey lawsuit. The Eleventh Circuit has held that one compelling circumstance that the court may consider is whether the first-filed "action was filed in apparent anticipation of the other pending proceeding." *Manuel*, 430 F.3d at 1135–36; *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).[1] But "this consideration does not transmogrify into an obligatory rule mandating dismissal. Such a finding still remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action." *Manuel*, 430 F.3d at 1135–36 (citation omitted). Other considerations may be drawn from the venue transfer statute, 28 U.S.C. § 1404(a), which permits a court to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." *Manuel*, 430 F.3d at 1135 & n.1;

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

*see also id.* at 1137.  "[T]he range of considerations available to the district court in deciding whether to entertain the declaratory action [despite the existence of a second-filed coercive action] is vast and the deference afforded to its decision is substantial."  *Manuel*, 430 F.3d at 1137–38.

The court finds that, based on the allegations in the amended complaint and the evidence presented by the parties, Guntersville filed this case as an improper anticipatory action.  When Guntersville filed this case, TSD had sent two cease and desist letters, had questioned Guntersville's violation of the no-contact rule by having its attorney contact TSD's CEO directly, had sent a litigation hold in a letter expressly stating that TSD was prepared to litigate the infringement question, and had given Guntersville a deadline to cease the allegedly infringing conduct.  (Doc. 23-1 at 2–4; doc. 23-3 at 2–5).  These actions made clear that TSD intended to file a coercive lawsuit and that Guntersville was aware of that intention when Guntersville decided to file what was, at the time, an action only for declaratory judgment.  (*See* doc. 1).  The court finds this to be a compelling factor.  Fear of the other party filing an anticipatory action can easily prompt a party with a dispute to rush to the courthouse instead of raising, discussing, and resolving issues outside the court system.  This imposes a burden not only on the specific parties to any given dispute, but also on the court system as a whole.

The court has also considered the other factors Guntersville raises (*see* doc. 26 at 23–24), but finds them neutral, *see* 28 U.S.C. § 1404(a); *Manuel*, 430 F.3d at 1135 & n.1.  Given the neutrality of the other factors and the compelling nature of the anticipatory-action factor, the court finds that TSD has satisfied its burden of establishing "compelling circumstances to warrant an exception to the first-filed rule."  *Manuel*, 430 F.3d at 1135.

## IV.    CONCLUSION

The court **GRANTS** TSD's motion to dismiss and **WILL DISMISS** this action **WITH PREJUDICE**.  The court **DENIES AS MOOT** Guntersville's motion for an injunction.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this April 20, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE